**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIA DIVISION**

| | |
|---|---|
| MARTIN SNEIDER, an individual, | **Case No. 25-cv-20707** |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | |
| PAUL MANGIAMELE, an individual, and DOES 1 through 10, | |
| Defendants. | |

Plaintiff Martin Sneider ("Plaintiff" or "Sneider") alleges as follows:

## SUMMARY OF ACTION

1.     This matter involves the conversion and fraudulent taking of a 1973 Porsche 911S Targa (the "Porsche").  Defendant Paul Mangiamele together with his auto lender and its agents acted unlawfully in order to try to shift their losses from a financially cratering auto dealer onto an innocent third-party.

2.     In May 2021 Plaintiff acquired the Porsche from Southern California auto dealer CPR Classic Sales ("CPR Classic") owned and operated by Andrea Doherty.  As a resident of Missouri, Plaintiff obtained a valid Missouri title for the Porsche.  In early-2022, Plaintiff returned the Porsche to California for warranty service at CPR Classic.  Ultimately, Plaintiff decided to allow Doherty to hold the car on consignment at CPR Classic's showroom in Fallbrook, CA.

3.     Unbeknownst to Plaintiff, in mid-2022 Doherty accepted consideration from Defendant intended for the purchase of the Porsche.  Newport Beach, CA auto lender Woodside Credit, LLC ("Woodside") financed approximately half the purchase price.  It did so even though there was no title

COMPLAINT

to secure the loan.  Additionally, since Plaintiff still had possession of the physical title in Missouri, Doherty could not deliver the car or transfer ownership to Defendant.

4.      Instead of paying Plaintiff, Doherty apparently used the funds to pay off other obligations.  She also delayed obtaining the title from Plaintiff since she could not pay him.

5.      Upon information and belief, in mid-2022 Woodside learned of CPR Classic's financial distress and became very concerned about the fate of its loan to Defendant.  Plaintiff is informed and believes that Woodside seized a number of cars from CPR Classic's showroom – including the Porsche.  Woodside took possession of the Porsche even though it knew Plaintiff remained the legal owner and it had no legal right to take it.

6.      By early-2023, Plaintiff had canceled the consignment and was demanding the return of his car from Doherty.  Doherty stalled Plaintiff has best as she could by making false promises that she was returning the car.

7.      Woodside knew that CPR Classic was in severe financial distress.  In order for Woodside to protect itself for the money it already tendered to CPR Classic, it needed to secure a title to the car.  To achieve this Woodside used Arizona auto dealer JSC Motorcars, LLC dba Cascio Motors ("Cascio Motors") and its officer, notary public Addison Brown, to forge a Missouri duplicate title application in Plaintiff's name.

8.      After Woodside received the fraudulently procured Missouri title, either Woodside or Brown forged Plaintiff's endorsement to obtain a California "dealer title" with Woodside as the lienholder and Defendant as the owner.  Woodside also seized physical control of the Porsche by staging a "repossession" from CPR Classic's showroom floor.

9.      After some additional title work, Defendant eventually obtained a Florida title.

10.      Upon information and belief, Defendant has since sold the Porsche to a third-party receiving market value for the car.  He did so notwithstanding his knowledge that his title was procured through fraudulent means and that Plaintiff was demanding the return of the car.

11.      By and through this action, Plaintiff seeks monetary damages against Defendant for his participation in a fraudulent conspiracy to deprive Plaintiff of his property and shift his own loss onto

COMPLAINT

2

Plaintiff.

## JURISDICTION AND VENUE

12.     Complete diversity exists between Plaintiff and Defendant in this action.  Plaintiff is a resident of Missouri whereas Defendant is a resident of Pompano Beach, Florida.

13.     This action also satisfies the jurisdictional amount.  It is brought to recover damages for the loss of Plaintiff's collectible Porsche which has a value of approximately $250,000 – or a value far exceeding the sum of $75,000.

14.     Since complete diversity exists between the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, this Court has jurisdiction under 28 U.S.C. section 1332(a)(1).

15.     Venue is proper in this district pursuant to 28 U.S.C. section 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District and the defendants have significant contacts with this District.

## THE PARTIES

16.     Plaintiff Martin Sneider is an individual who at all relevant times resided in the city of Clayton located in St. Louis County, Missouri.

17.     Plaintiff is informed and believes and based upon such information and belief alleges that Defendant Paul Mangiamele is a resident of Pompano Beach, Florida.

18.     Plaintiff is not aware of the true names, identities, or capacities of the Defendants sued herein as Does 1 through 10, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes that, at various relevant times, said Doe Defendants participated in, or otherwise were in some manner responsible for the harm that arose from the facts and occurrences alleged in this complaint. Plaintiff will seek leave of the court to amend this complaint to state the true names of the fictitiously named Defendants once they are discovered.

## GENERAL FACTUAL ALLEGATIONS

**A.     CPR Classic Was Consignee of Plaintiff's Porsche 911S Targa Titled in Missouri**

19.     Plaintiff is an 82-year-old retired businessman residing in the St. Louis area who at all

COMPLAINT

3

relevant times was the sole owner of a 1973 silver Porsche 911S Targa, vehicle identification number 9113310886 (the "911S Targa").

20.     In May 2021, Plaintiff purchased the 1973 911S Targa from CPR Classic in Fallbrook, California.  Plaintiff obtained a valid transfer of title, and on June 4, 2021 the Department of Revenue in the State of Missouri issued Plaintiff a Certificate of Title in his name.  (Exhibit "A.")

21.     As part of the sales agreement, CPR Classic warrantied the car for one-year.  Thus, in October 2021 when the car had engine problems Plaintiff transported the car from Missouri back to CPR Classic in California for repairs.

22.     Before CPR Classic returned the car, Plaintiff agreed to allow Doherty to try to keep possession of the car on consignment.  The two entered into a consignment agreement.  (Exhibit "B.") Under the terms of the consignment agreement, Plaintiff retained possession of his Missouri title.  If CPR Classic were able to make a sale, Plaintiff was to send the title to Doherty.

**B.     Defendant Borrowed Money from Woodside and Traded-in His Ferrari for the Porsche**

23.     In May 2022, Defendant decided he wanted to purchase the Porsche. Woodside extended a loan to Defendant and wired approximately $100,000 towards the purchase of the Porsche. Defendant also gave CPR Classic title to his Ferrari for the remainder of the purchase price of $235,000.

24.     Woodside wired the money to CPR Classic notwithstanding that CPR Classic did not have the title to the Porsche.  Without the title, Woodside could not secure its loan.  Also, Defendant could not become the new owner of the car.

25.     CPR Classic did not inform Plaintiff in Missouri that it had received consideration for his car.  Instead, the car remained on CPR Classic's website listed as available to any interested buyers.

**C.     Woodside Took Possession of the Car and Hid This from Its True Owner – Plaintiff**

26.     Upon information and belief, in July 2022 Woodside learned of rumors concerning CPR Classic's finances and feared a collapse of the business.  This caused fear of never being paid for the approximately $100,000.00 it paid to CPR Classic.

COMPLAINT

4

27.     Accordingly, upon information and belief, an officer of Woodside traveled to CPR Classic's showroom along with an auto repossession agent.  Woodside seized possession of the Porsche even though it knew that it had no security interest and no legal right to take it since Plaintiff was still the legal owner.[1]

28.     Woodside transported the Porsche to its secure facility and intentionally did not notify Plaintiff that it had taken his car.

29.     During the latter half of 2022, Doherty continued to stall Plaintiff to avoid having to return the car.  For example, she claimed that she herself would purchase the car for CPR Classic's inventory – but her promised wire transfer never materialized.

30.     On December 22, Plaintiff again told Doherty to "[p]lease ship my car immediately."

**D.     Woodside Used Brown and Cascio Motors to Obtain a Fraudulent Missouri Duplicate Title in Plaintiff's Name**

31.     In order to secure a title to the Porsche in Defendant's name, Woodside enlisted the help of one of its vendors – Addison Brown with Cascio Motors.  Cascio Motors is an auto dealer in Scottsdale, Arizona specializing in exotic sports cars.

32.     On or about January 18, 2023, Brown submitted a fraudulent duplicate title application in Plaintiff's name to the State of Missouri Department of Revenue.  On the duplicate title application, Brown forged Plaintiff's signature.  She also used her own notary public commission to notarize her forgery:

---

[1] *See Quartz v. Mullen Bros*. (2007) 151 Cal.App.4th 901, 908 (holding that no security interest attaches to any vehicle until the secured party has deposited "a properly endorsed certificate of ownership… showing the secured party as legal owner.").

COMPLAINT

5

**E.      Plaintiff Sent His Attorney to CPR Classic to Recover the Porsche**

33.     On February 14, 2023, Plaintiff's attorney went to CPR Classic's showroom in Fallbrook to locate the Porsche.  The Porsche was not in the showroom, and when questioned Doherty falsely stated that the car had been sent for an upholstery repair before it could be shipped back to Plaintiff in Missouri.

34.     In reality, upon information and belief Woodside already had taken possession of the car.

**F.      After Forging Plaintiff's Signature a Second Time, Woodside Obtained a California Title for Defendant**

35.     Within three days of counsel's visit to CPR Classic, Woodside secured the fraudulent duplicate title issued by the Missouri Department of Revenue.

36.     Upon information and belief, Woodside or someone acting on its behalf forged Plaintiff's signature a second time on the Missouri duplicate title.  This signature served to transfer ostensible ownership to Defendant.  It also allowed Woodside to have – at least on paper – a lien securing its loan.

37.     This third-party vendor processed the fraudulently obtained Missouri duplicate title with a forged endorsement to obtain a "dealer's title." The dealer's title showed Defendant as the registered owner and Woodside as the legal owner – or a secured lender.

38.     A California DMV report showed that Woodside did not process the Missouri duplicate title until February 17 2023:

COMPLAINT

```
DATE/TIME OF RESPONSE: 03/29/23 13:44
LIC/VIN: 911330886

PNO VALID FROM: 02/17/23
REG VALID FROM: 01/28/22 TO 01/28/23
LIC#:5QRP395 YRMD:73 MAKE:PORS BTM :CP
VIN :911330886
CLAS:MA #-YR:22
TYPE:C0 VEH :13 BODY:0 POWR:G LOCD:M

OWNER AS OF 02/20/23

PURCHASE/APPLICATION: 00/00/00

OWNER ISS: 02/17/23 REG ISS: 02/17/23
PRIOR R/O:MANGIAMELE PAUL MICHAEL, 1600 S OCEAN BLVD MPH03, POMPANO BEACH
CITY:FL
PRIOR L/O:WOODSIDE CREDIT, PO BX 12379
CITY:NEWPORT BEACH

REC STATUS:
02/17/23 MA CLASS VEHICLE VALUE: 0235000
TIP OFC:518 D:03/27/23 ID/S:F19441 T:K00
V:0000000 R:35Z          RT:
PNO-REGISTRATION DEFERRED
VEHICLE CURRENTLY NOT REGISTERED

01/26/2023-ODOMETER:     2,310 MILES ACTUAL MILEAGE
END OF DATA
```

39.     In addition, the new California title contained a single-digit error in the middle of the VIN.  Plaintiff believes that this may have been intentional on the part of Woodside in order to conceal the whereabouts of the car from Plaintiff.

## G.     Plaintiff Demanded Return of His Car but Defendant Continued to Collaborate with Woodside to Complete the Unlawful Title Transfer

40.     By February 28, 2023, Plaintiff had identified Defendant as the Woodside borrower and alleged transferee of Porsche's title.  Plaintiff's counsel sent correspondence to Defendant demanding that he stop any activities to take either possession or title to the car:

> [I]t appears that there were a series of very troubling circumstances and mishandling of the Porsche and its titling – in both Missouri and California.  It seems that these events already have resulted in some unfortunate expense and consternation.
>
> Also, as I indicated earlier it appears that Woodside Credit has a lien on the Porsche relating to your transaction and may have possession of it.  My client urges that no action be taken or any changes made with respect to either the title or the possession of the Porsche.

41.     Defendant did not contact Plaintiff's counsel or otherwise respond to the letter.

COMPLAINT

7

Defendant was also not responsive to calls from California Highway Patrol investigators.

42.     On March 8, 2023, after learning more about Woodside's activities Plaintiff's counsel sent Defendant correspondence via Fedex and email demanding the immediate return of the car due to the fraudulent title procured by his lender.  Once again, Plaintiff received no response.

**H.     Woodside Shipped the Porsche to Defendant in Florida but He Could Not Obtain a Florida Title**

43.     Upon information and belief, Woodside demanded that Defendant pay the balance of the loan before it would relinquish possession of the car and ship it to Florida.

44.     In either late-February or early-March Defendant paid the balance of the loan, and Woodside shipped the car to him in Florida.  Defendant still needed, however, to convert his California-issued "dealer's title" to a Florida title that would allow him to lawfully operate the car on public roads.

45.     Because the VIN on the title did not perfectly match the VIN on the vehicle, Florida authorities rejected Defendant's title application.

**I.     Defendant Took Action to Change His Flawed California Title with an Incorrect VIN so That Florida Would Issue a Title**

46.     On March 27, Plaintiff's counsel send a letter to both Woodside and Defendant outlining his understanding of the course of events and demanding that the parties cease and desist activities processing Defendant's title work.

> At this time, there is apparently a CA DMV-issued
> "dealer's title" with a single-digit error in the VIN showing
> Mr. Mangiamele as the owner…  This error has prevented
> Mr. Mangiamele from titling the car in Florida.  Apparently,
> Mr. Mangiamele has indicated that he was working to obtain
> a new title – which requires obtaining more paperwork from
> the CA DMV.
>
> ***

COMPLAINT

8

[M]y client respectfully demands that Mr. Mangiamele refrain from knowingly participating in these activities.

47.     Plaintiff received no response from either Defendant or the other recipients to the letter. Also, apparently Defendant continued working with Woodside to finalize the title work even after he was aware of its fraudulent inception.

48.     Upon information and belief, Defendant obtained the needed changes to the fraudulent title from the California DMV such that the Florida Department of Safety and Motor Vehicles issued Defendant a title to the Porsche.

49.     Plaintiff alleges that Defendant sold the Porsche soon after obtaining a Florida title to avoid Plaintiff recovering title to the car. His sale of the Porsche and receipt of the proceeds is the product of multiple acts of fraud committed in California, Arizona, Missouri and, ultimately, Florida. These acts of fraud involve, at a minimum, two licensed auto dealers and a specialty auto lender.  Each used its knowledge of the auto trading industry to enrich themselves at the expense of an innocent member of the public.

50.     On August 20, 2023, Plaintiff filed a lawsuit against Woodside, Cascio Motors, Brown, Doherty and Defendant in the U.S. District Court for the Central District of California captioned *Sneider v. Woodside Credit, LLC*, *et al*., U.S. Dist. Ct., Central Dist. CA, Case No. 2:23-cv-06840 (the "CA Action").

51.     On May 26, 2024, the Hon. Sherilyn Peace Garnett entered an Order in the CA Action dismissing the Defendant for lack of personal jurisdiction in California.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – FRAUD

**(Against Mangiamele and Does 1-10)**

52.     Plaintiff incorporates the allegations of each and every preceding paragraph as though set forth herein in their entirety.

53.     As set forth herein, at all relevant times Plaintiff had a right of ownership in and right

COMPLAINT

9

of possession of the Porsche.

54.     Through Defendant's coordination and participation with Woodside and its affiliates, Defendant committed acts of fraud that proximately resulted in Plaintiff's loss of his property.

55.     Defendant committed fraud by and through each of the following wrongful acts:

- Paying money to Woodside in order to obtain a fraudulent title while being fully cognizant of its fraudulent nature;

- Arranging for the shipment of the Porsche to Florida to prevent Plaintiff from recovering the Porsche; and

- Executing documents in order to complete a "VIN-correction" with the California DMV;

- Applying for a title in Florida to complete the process of transferring the fraudulent Missouri duplicate title into an ostensibly clean Florida title.

56.     By committing the forgoing acts, Defendant intentionally and substantially interfered with Plaintiff's ownership interests in the Porsche and caused harm to Plaintiff.

57.     Defendant's conduct was a substantial factor in causing Plaintiff's harm.

58.     Plaintiff reasonably relied upon each of the above misrepresentations.

59.     Plaintiff has suffered, and will continue to suffer, damages and losses as a result of Defendant's taking of Plaintiff's property, including, but not limited to, the loss of the value of the Porsche, the expenses associated with recovering the Porsche, the costs of litigation, and any other such further damages as may be proved at the trial of this matter.

60.     In doing the acts and omissions herein alleged, Defendant acted with oppression, fraud, and malice, and Plaintiff is entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION – AIDING AND ABETTING FRAUD

### (Against Mangiamele and Does 1-10)

61.     Plaintiff incorporates the allegations of each and every preceding paragraph as though set forth herein in their entirety.

62.     Plaintiff was harmed by the fraud committed by Woodside and Cascio Motors, and

COMPLAINT

Defendant is responsible for this harm because Defendant aided and abetted Woodside and Cascio Motors in committing their actions.

63.     Defendant knew that fraud was being committed or had been committed by Woodside and Cascio Motors against Plaintiff because – *inter alia* – counsel for Plaintiff informed Defendant of this in writing.

64.     Defendant gave substantial assistance and encouragement to Woodside and Cascio Motors by agreeing to pay his loan balance to Woodside in exchange for receiving the fraudulent title.

65.     Defendant further gave substantial assistance and encouragement by executing documents to complete the "VIN correction" by the California Dept. of Motor Vehicles that the State of Florida required before issuing a title.

66.     Defendant's conduct was a substantial factor in causing harm to Plaintiff. Woodside and Cascio Motors would not have been able to commit its fraud and would have had no incentive if Defendant had not been willing to pay his loan balance in exchange for a fraudulent title and physical possession of the Porsche.

67.     As a direct and proximate result of Defendant's aiding and abetting fraud, Plaintiff has suffered, and will continue to suffer, damages and losses, including, but not limited to, the loss of the value of the Porsche, the expenses associated with recovering the Porsche, the costs of litigation, and any other such further damages as may be proved at the trial of this matter.

68.     In doing the acts and omissions herein alleged, Defendant acted with oppression, fraud, and malice, and Plaintiff is entitled to punitive and exemplary damages.

<u>**THIRD CAUSE OF ACTION – CONVERSION**</u>

**(Against Mangiamele and Does 1-10)**

69.     Plaintiff incorporates the allegations of each and every preceding paragraph as though set forth herein in their entirety.

70.     At all relevant times Plaintiff had a right to possess the Porsche.

71.     In or around March 2023 Woodside transferred its wrongful possession of the Porsche to Defendant.  By Defendant's unlawful taking of the Porsche and refusing to return it, Defendant

COMPLAINT

knowingly and substantially interfered with Plaintiff's property.

72.   At all relevant times, Plaintiff had a right to possess the Porsche and did not consent to Defendant's taking of the Porsche.

73.   At all relevant times, Defendant's taking possession of the Porsche and sale and transfer of title to the Porsche was a substantial factor in causing Plaintiff's harm.

74.   As a result of the conversion committed by Defendant, Plaintiff has incurred damages including but not limited to legal loss of the Porsche valued at approximately $250,000 or according to proof.

<u>**FOURTH CAUSE OF ACTION – AIDING AND ABETTING CONVERSION**</u>

**(Against Mangiamele and Does 1-10)**

75.   Plaintiff incorporates the allegations of each and every preceding paragraph as though set forth herein in their entirety.

76.   Plaintiff was harmed by the conversion committed by Woodside. Defendant aided and abetted Woodside in committing the conversion alleged herein.

77.   Defendant knew that conversion was being committed by Woodside against Plaintiff due to the title issues and because Plaintiff's counsel informed him.

78.   Defendant gave substantial assistance and encouragement to Woodside by – *inter alia* – agreeing to pay his loan balance to Woodside in exchange for receiving the fraudulent title.

79.   Defendant's conduct was a substantial factor in causing harm to Plaintiff. Woodside would not have had the same financial incentive to commit its conversion of Plaintiff's Porsche if Defendant had not been willing to pay the balance of his loan.

80.   As a direct and proximate result of Defendant's aiding and abetting conversion, Plaintiff was unable to prevent the events described from occurring and thereby suffered damage in excess of $250,000 or according to proof.

81.   In doing the acts and omissions herein alleged, Defendant acted with oppression, fraud, and malice, and Plaintiff is entitled to punitive and exemplary damages.

COMPLAINT

## FIFTH CAUSE OF ACTION – UNJUST ENRICHMENT

### (Against Mangiamele and Does 1-10)

82.     Plaintiff incorporates the allegations of each and every preceding paragraph as though set forth herein in their entirety.

83.     Defendant was enriched as a result of his unlawful obtaining of a fraudulent title to the Porsche, securing possession of the Porsche and selling the Porsche to a third-party.

84.     Defendant knew or should have known that the Porsche rightfully belonged to Plaintiff and that his actions and the actions of third-parties acting in concert with him to obtain a title through fraudulent means wrongfully shifted his loss from CPR Classic's financial collapse onto Plaintiff.

85.     Plaintiff has been impoverished as a result of these actions and is entitled to restitution for the monies and/or property received by Defendant in exchange for the sale of the Porsche.

86.     If no adequate remedy at law is available for Plaintiff's impoverishment, Plaintiff is entitled to recover under a theory of unjust enrichment and/or restitution

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

On All Causes of Action:

1.     For general damages;

2.     For costs of suit herein incurred;

3.     For exemplary and punitive damages;

4.     Applicable pre-judgment interest; and

5.     For such other and further relief as the Court may deem proper.

COMPLAINT

13

Dated: February 14, 2025

By: *MMM*
Menachem Mayberg, Esq.
SELTZER MAYBERG LLC
Florida Bar #0596744
10750 NW 6th Court, 2nd Floor
Miami, FL 33169
Tel: 305-444-1565
Primary: menachem@smfirm.com
Secondary: kassanda@smfirm.com
Counsel for Plaintiff
Martin Sneider

COMPLAINT